**McGuireWoods LLP**
Sabrina A. Beldner (SBN 221918)
Email: sbeldner@mcguirewoods.com
David Szwarcsztejn (SBN 272371)
Email: dszwarcsztejn@mcguirewoods.com
Charles J. Ureña (SBN 348232)
Email: curena@mcguirewoods.com
1800 Century Park East, 8th Floor
Los Angeles, CA  90067-1501
Telephone:  310.315.8200
Facsimile:  310.315.8210

Attorneys for Defendant
EQUINIX, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELISSA CIVELLO, an individual; | CASE NO. |
| Plaintiff, | [San Mateo County Superior Court Case No. 24-CIV-07664] |
| vs. | |
| EQUINIX, INC., a California Corporation, ROBERT MARTIN, an individual, JON TAYLOR, an individual, BLAKE REGAN, an individual, ERIC MEYER, an individual, AND DOES 1 TO 50, INCLUSIVE; | **DEFENDANT EQUINIX, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT** |
| Defendants. | *[Supporting Declaration of Selena Jaudon Filed Under Separate Cover]* |

**TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, PLAINTIFF MELISSA CIVELLO, AND HER COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that Defendant EQUINIX, INC. ("Equinix" or "Defendant") by and through its undersigned counsel, hereby removes the above-entitled action from the Superior Court of the State of California in and for the County of San Mateo (the "State Court"), in which the action is currently pending, to the United States District Court for the Northern District of California. Removal is proper based on original subject-matter jurisdiction of this Court under traditional diversity jurisdiction pursuant to 28 U.S.C. § 1332 and/or federal question jurisdiction pursuant to 28 U.S.C. § 1331, respectively. This Removal comports with 28 U.S.C. §§ 1441, 1446 and all other applicable bases for removal. In support of this Notice of Removal, Defendant avers as follows:

## I.    BACKGROUND.

1.    On December 3, 2024, Plaintiff MELISSA CIVELLO ("Plaintiff") filed a Verified Complaint for Damages ("Complaint") in State Court commencing this action against Defendant, in a case entitled, "*MELISSA CIVELLO, an individual v. EQUINIX, INC., a California Corporation, ROBERT MARTIN, an individual, JON TAYLOR, an individual, BLAKE REGAN, an individual, ERIC MEYER, an individual, and DOES 1 TO 50, inclusive,*" San Mateo Superior Court Case No. 24-CIV-07664 (the "State Court Action"). A true and correct copy of the Complaint as filed is attached hereto as **Exhibit A**. A true and correct copy of the unserved Summons, Civil Case Cover Sheet, and Notice of Assignment are attached hereto as **Exhibits B, C and D, respectively**. The foregoing Exhibits constitute the entirety of the record in the State Court Action.

2.    The Complaint names as defendants Equinix, a California Corporation doing business in Redwood City, California, (Compl., ¶ 2); ROBERT MARTIN ("Martin"), an individual who Plaintiff alleges resides in Holly Springs, North Carolina, (*id.*, ¶ 3); JON TAYLOR ("Taylor"), an individual who Plaintiff alleges resides in Atlanta, Georgia, (*id.*, ¶ 4); BLAKE REGAN ("Regan"), an individual who Plaintiff alleges resides in Bolingbrook, Illinois, (*id.*, ¶ 5); ERIC MEYER ("Meyer"), an individual who Plaintiff alleges resides in Tampa, Florida, (*id.*, ¶ 6); and Does 1–50.

3.    In the Complaint, Plaintiff asserts nine (9) Causes of Action against Equinix: (1) Discrimination/Disparate Treatment Based Upon Gender in Violation of The California Fair

Employment and Housing Act ("FEHA"); (2) Harassment Based on Gender and Creation of a Hostile Work Environment in Violation of FEHA; (3) Gender Discrimination in Violation of FEHA; (4) Reprisal in Violation of FEHA; (5) Violations of the California Equal Pay Act, California Labor Code § 1197.5 *et seq.*; (6) Wrongful Termination; (7) Breach of Contract; (8) Breach of the Implied Covenant of Good Faith and Fair Dealing; and (9) Discrimination/Disparate Treatment Based Upon Age in Violation of FEHA.

4.      The Complaint purportedly seeks to assert the First through Sixth Causes of Action against individual defendants Martin, Taylor, Regan, and Meyer (collectively, the "Individual Defendants").

5.      As of December 6, 2024, the date this Notice of Removal was filed, none of the named defendants have been served with the Complaint in the Action, and therefore are not required to join this motion.  *See* 28 U.S.C. § 1446(b)(2) (all defendants "who have been properly joined ***and served*** must join in or consent to the removal of the action.") (emphasis added).  (*See also* Declaration of Selena Jaudon in Support of Defendant Equinix, Inc.'s Notice of Removal of Civil Action from State Court ("Jaudon Decl."), ¶ 9.)  Defendants DOES 1 through 50 have yet to be identified and are therefore disregarded for purposes of this removal.  28 U.S.C. § 1441(a).

## II.    <u>REMOVAL IS TIMELY.</u>

6.      This action has not previously been removed to federal court.

7.      On or about December 3, 2024, Plaintiff commenced this action by filing her Complaint in the State Court Action in the Superior Court of the State of California, in and for the County of San Mateo.

8.      This Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b), which provides that such Notices "shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based."  On December 5, 2024, Equinix obtained a copy of the file-stamped Complaint.  As of the time of this filing, Equinix has not been served, and this Notice of Removal is therefore timely.  (*See* Jaudon Decl., ¶ 9.)

III.    **THE COURT HAS DIVERSITY JURISDICTION.**

9.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), and it is an action that may be removed to this Court by Defendant, because: (1) there is complete diversity of citizenship between Plaintiff, on the one hand, and Defendant, on the other hand; and (2) the amount-in-controversy exceeds $75,000, exclusive of interest and costs.

A.    **CITIZENSHIP**

10.     **Plaintiff is a citizen of the State of Arizona.**  The Complaint alleges that Plaintiff is "at all relative [*sic*] times herein, is an individual, who resides in Chandler, County of Maricopa, State of Arizona." (Compl., ¶ 1.)  For diversity purposes, a person is a "citizen" of the place in which she is domiciled. *See Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983).  Residence is *prima facie* evidence of domicile. *See State Farm Mut. Aut. Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994).  Here, Plaintiff has admitted that she is currently domiciled in Arizona.  Further, during her employment with Equinix, Plaintiff received all wage statements and Form W-2s at her home address in Chandler, Arizona.  (*See* Jaudon Decl., ¶ 3.)  Therefore, Plaintiff is a resident and citizen of the State of Arizona for purposes of diversity jurisdiction.  *See* 28 U.S.C. § 1332(a)(1) (an individual is a citizen of the state in which he or she is domiciled); *see also, e.g.*, *Mondragon v. Capital One Auto Fin.*, 776 F.3d 880, 885-86 (9th Cir. 2013) (person's continuing domicile in a state establishes citizenship for purposes of removal "unless rebutted with sufficient evidence of change"); *Lew v. Moss*, 797 F.2d 747, 751-52 (9th Cir. 1986) (party domiciled in state of party's address).

11.     **Equinix is not a citizen of the State of Arizona.**  Equinix is incorporated in the state of Delaware, with its principal place of business in Redwood City, California. (Jaudon Decl., ¶ 8); *see also* https://bizfileonline.sos.ca.gov/search/business (Entity Search: "Equinix, Inc.").  Thus, Defendant was and is a citizen of the States of Delaware and California for the purpose of determining minimum diversity jurisdiction.[1]   28 U.S.C. § 1332(c)(1); *see also Humana, Inc.v. Handa Pharmaceuticals*, 2023 WL 5227191, at *2 n.2 (N.D. Cal. Aug. 15, 2023) (Ryu, M.J.); *Fobb v. Uber*

---

[1] If this Court's jurisdiction is challenged, either by Plaintiff or *sua sponte*, Defendant expressly reserves and does not waive its right to supplement and/or amend its removal submissions to present additional information regarding the citizenship of each or all of the Defendants to demonstrate the existence of the requisite diversity between the parties.

*Techs., Inc.*, 2022 WL 620336, at *2 (N.D. Cal. Mar. 3, 2022) (Gilliam, J.).

12. **No Individual Defendant is a Citizen of the State of Arizona.** As Plaintiff readily concedes in the allegations in her Complaint, the Individual Defendants are citizens of North Carolina, Georgia, Illinois, and Florida, respectively. (*See* Compl., ¶¶ 3-6; *see also* Jaudon Decl., ¶¶ 4-7.) No Individual Defendant is a citizen of the state of Arizona. In fact, Equinix's personnel records for the Individual Defendants reflect the following: Taylor's residential address of record is in Cumming, Georgia; Meyer's residential address of record is in Fort Lauderdale, Florida; Martin's residential address of record is in Holly Springs, North Carolina; and Regan's residential address of record is in Pingree Grove, Illinois. (Jaudon Decl., ¶¶ 4-7.)

13. **Doe Defendants' Citizenship.** The citizenship of fictitious defendants is disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. § 1332. *See* 28 U.S.C. § 1441(a); *see also Bryant v. Ford Motor Co.*, 886 F.2d 1526 (9th Cir. 1989), cert. denied 493 U.S. 1076 (1990).

14. **The Forum Defendant Rule Does Not Apply.** To the extent Plaintiff cites 28 U.S.C. § 1441(b)(2) to argue that the Action may not be removed because certain of "the parties in interest properly joined and served as defendants [are] citizen[s] of the state in which such action is brought," that argument fails because none of the defendants, including Equinix, have been served with the Complaint. Courts in this district have "consistently held a defendant may remove an action prior to receiving proper notice, even when the defendant resides in the state in which the plaintiff filed the state claim." *Humana*, 2023 WL 5227191, at *3 (quoting *Loewen v. McDonnell*, 2019 WL 2364413, at *7 (N.D. Cal. June 5, 2019) (Rogers, J.) and *Sherman v. Haynes & Boone*, 2014 WL 4211118, at *1 (N.D. Cal. June 5, 2019)) (Grewal, M.J.); *Fobb*, 2022 WL 620336, at *2 ("[t]he decisions in this district to have considered the question nearly unanimously support Defendants' position [that a plain reading of the statute allows pre-service removal by a forum defendant].""); *Monfort v. Adomani, Inc.*, 2019 WL 131842, at *3 (N.D. Cal. Jan. 8, 2019) (Koh, J.). The same is true here: Because Equinix has not received proper notice or service of the Complaint, removal is proper even if Equinix resides in the state in which Plaintiff filed the Action.

15. **Citizenship is Diverse.** Because Plaintiff is a citizen of Arizona, and no defendant is a citizen of Arizona, complete diversity of citizenship is met.

**B.**    **THE AMOUNT IN CONTROVERSY EXCEEDS $75,000.**

16.    While Equinix denies any liability whatsoever, the amount in controversy requirement is satisfied because it is "more likely than not" that the amount at issue exceeds the jurisdictional minimum of $75,000.

17.    The amount-in-controversy inquiry in the removal context is not confined to the face of the complaint. *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004).  "[T]he amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Comm., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010); *see also Abrego v. Dow Chemical Co.*, 443 F.3d 676, 683 (9th Cir. 2006); *Bank of Calif. Nat'l Ass'n v. Twin Harbors Lumber Co.*, 465 F.2d 489, 491 (9th Cir. 1972).[2]   A removing defendant need only show that "it is more likely than not" that the amount-in-controversy is satisfied.  *See Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996).

18.    Indeed, when a defendant seeks to remove an action to federal court on grounds of diversity jurisdiction, "the defendant's amount-in-controversy allegation should be accepted [as true] when not contested by the plaintiff or questioned by the court."  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 82 (2014); *Arias*, 936 F.3d at 927 ("[A]ssumptions made part of the defendant's chain of reasoning need not be proven; they instead must only have 'some reasonable ground underlying them.'").

19.    In determining the amount in controversy at the time of removal, the Court is not limited to the amount of damages incurred as of the time of removal, but may look forward in time to damages that can be recovered in the future. *Chavez v. JP Morgan Chase & Co.*, 888 F.3d 413, 417-18 (9th Cir. 2018) ("That the amount in controversy is assessed at the time of removal does not mean that the mere futurity of certain classes of damages precludes them from being part of the amount in controversy.").  Additionally, to "determine the amount in controversy alleged in the complaint, the Court may considered the prayer for relief." *Gillings v. Time Warner Cable LLC*, 2011 WL 13273074, at *3 (C.D. Cal. Jan. 6, 2011).

---

[2] *See, e.g.*, *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 924 (9th Cir. 2019) ("A district court may not remand the case back to state court without first giving the defendant an opportunity to show by a preponderance of the evidence that the jurisdictional requirements are satisfied.").

20.     Based on the nature of the allegations and the damages sought, Plaintiff has placed in controversy an amount exceeding $75,000, exclusive of costs and interest.  The Complaint asserts nine separate Causes of Action for: (1) gender discrimination/disparate treatment; (2) harassment based on gender; (3) discrimination based on gender; (4) reprisal; (5) violations of the California Equal Pay Act; (6) wrongful termination; (7) breach of contract; (8) breach of the covenant of good faith and fair dealing; and (9) age discrimination. [3]

21.     Although Plaintiff does not plead a specific dollar amount, the Complaint expressly seeks, *among other things*, damages for:

(a) "special damages, according to proof at trial," (Compl., Prayer for Relief, ¶ 1);

(b)  "general damages, according to proof at trial," (*id.*, ¶ 2);

(c) "compensatory damages, according to proof at trial," (*id.*, ¶ 3);

(d) "mental and emotional distress damages, and damages for injury to reputation, according to proof at trial," (*id.*, ¶ 4);

(e) "punitive damages, according to proof at trial," (*id.*, ¶ 5);

(f) "reasonable attorney's fees and costs, according to proof at trial," (*id.*, ¶ 6);

(g) "interest, including prejudgment interest, at the maximum legal rate, according to proof at trial," (*id.*, ¶ 7);

(h) Costs, (*id.*, ¶ 8); and

(i) "such and further relief as the Court may deem just and proper," (*id.*, ¶ 9).

### *Compensatory Damages – Employment Claims*

22.     Plaintiff alleges that she was hired by Equinix as a Senior Security Engineer on July 19, 2021, with an annual base salary of $185,300.00, plus eligibility for a 20% annual bonus. (Compl., ¶ 9.)  At the time of her termination on July 19, 2023, Plaintiff earned $195,613.00 per year. (*Id.*, ¶¶ 9, 114; Jaudon Decl., ¶ 3.)

---

[3] The amount in controversy calculations, as set forth below, are based on an assumption *for purposes of removal only* that the allegations of Plaintiff's Complaint regarding his theories of liability are true but <u>without</u> any type of express or implied admission that the conduct alleged in the Complaint occurred, that Plaintiff has suffered any damages, and that such liability in fact exists.  *See, e.g.*, *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2005) ("Removability under § 1446(b) is determined through examination of the four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiry.").

23.     Solely for purposes of removal, Defendant **conservatively** calculates Plaintiff's past lost wages claim from July 19, 2023, through the date of Defendant's filing of their Notice of Removal (*i.e.*, December 6, 2024), at not less than **$270,848.88** [$195,613.00 / 52 = $3,761.79 per week; $3,761.79 *x* 72 weeks between July 19, 2023, and December 6, 2024 = $270,848.88). Assuming a conservative trial date of one year after Plaintiff filed her Complaint, approximately 124 weeks will have elapsed since Plaintiff's resignation, bringing the amount of claimed lost compensation to approximately **$466,461.96** ($3,761.79 *x* 124 = $466,461.96).

24.     Plaintiff also seeks future lost wages. (Compl., ¶ 166.) Assuming conservatively that Plaintiff recovers future wages for only a period of six additional months, the amount in controversy on Plaintiff's future lost wages claim would be **$97,806.54** [$3,761.79 *x* 26 weeks = $97,806.54].

### *Compensatory Damages – Breach of Contract Claims*

25.     Plaintiff seeks compensatory damages arising out of an alleged contract to provide Plaintiff with 2,289 shares of Equinix, Inc. stock. (Compl., ¶¶ 169-171.) The appropriate measure of contract damages is the difference between the actual value of what plaintiff has received and that which she expected to receive. *Overgaard v. Johnson*, 68 Cal.App.3d 821, 823 (1977). Plaintiff alleges that she expected to receive 2,289 shares of Equinix, Inc. stock, and received no Equinix, Inc. stock. (Compl., ¶ 169.) As of the close of trading on December 4, 2024, Equinix (EQIX) common stock traded for approximately $966.04 per share. Accordingly, the amount in controversy for Plaintiff's breach of contract claim alone would be **$2,211,265.56** [2,289 shares *x* $966.04 per share = $2,211,265.56].

### *Emotional Distress Damages*

26.     Plaintiff also seeks to recover damages for "severe emotional distress." (Compl., ¶¶ 124, 135, 182; *see also id.*, Prayer for Relief, ¶ 4.)

27.     Emotional distress damages are appropriately considered by the Court in determining whether the amount in controversy is satisfied for purposes of removal. *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005); *see also, e.g.*, *Simmons v. PCR Technology*, 209 F.Supp.2d 1029, 1034 (N.D. Cal. 2002). In *Kroske*, an age discrimination case, the Ninth Circuit held that the trial court properly estimated $25,000 for emotional distress damages for purposes of satisfying the

amount-in-controversy where the plaintiff's wage loss was only $55,000. Accordingly, based on Plaintiff's Complaint and the estimate accepted by the Ninth Circuit in *Kroske* (a 2005 case that has not accounted for the inflation in the 19 years since the *Kroske* decision issued), Equinix conservatively estimates that the minimum value of Plaintiff's emotional distress damages for her purported "severe emotional distress," would be ***at least* __$25,000.00__** for purposes of calculating the reasonable amount in controversy in this action. *See Johnson v. Wal-Mart Assocs., Inc.*, 2023 WL 2713988, at *7 (C.D. Cal. Mar. 30, 2023) (finding that at least $25,000 was at issue for emotional distress damages where plaintiff expressly sought damages for "pain and suffering"); *Zamudio v. Aerotek, Inc.*, 2022 WL 458059, at *5 (E.D. Cal. Feb. 15, 2022) (denying remand and finding that an award for emotional distress of "at least $25,000 is appropriate for consideration in calculating the amount in controversy); *Narayan v. Compass Grp. USA, Inc.*, 284 F.Supp.3d 1076, 1092 (E.D. Cal. 2018) (England, Jr., J.) (denying remand and finding that $25,000 constituted a "minimal award of emotional distress damages" where plaintiff sought unspecified damages for emotional distress); *Liemandt v. Mega RV Corp.*, 2011 WL 2912831 (Cal. Super. Ct. Feb. 4, 2011) ($385,000 emotional distress award to plaintiff for wrongful termination); *Grodzik v. Calif. Conservation Corps.*, 2010 WL 2734467 (Cal. Super. Ct. June 15, 2010) ($100,000.00 emotional distress award to plaintiff on retaliation claims).

### *Punitive Damages*

28.    Plaintiff also seeks punitive damages in connection with her claims. (Compl., ¶¶ 136, 162, 167, Prayer for Relief, ¶ 5.)

29.    The Ninth Circuit has held that punitive damages should be considered by a district court when determining the amount-in-controversy where they are recoverable as a matter of law. *See Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001). District courts routinely find that "the potential for large punitive damage awards" in employment cases satisfies the $75,000 amount in controversy without even considering other damages. *See Simmons*, 209 F.Supp.2d at 1033; *see also, e.g.*, *Chambers v. Penske Truck Leasing Corp.*, 2011 WL 1459155, at *4 (E.D. Cal. Apr. 15, 2011) (Austin, J.) (finding that amount in controversy was satisfied because "punitive damages in employment matters may be substantial"). Furthermore, punitive damages verdicts on claims similar

to Plaintiff's claims here typically far exceed the $75,000 jurisdictional minimum **on their own**.  *See, e.g.*, *Lopez v. Bimbo Bakeries USA, Inc.*, 2009 WL 1090375, at *10-18 (Cal. Ct. App. Apr. 23, 2009) (affirming *$2 million* punitive damages award on plaintiff's FEHA discrimination/wrongful termination claims).

30.    In *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 403, 425 (2003), the U.S. Supreme Court held that the longstanding historical practice of setting punitive damages at two, three, or four times the size of compensatory damages, while "not binding," is "instructive," and that "[s]ingle-digit multipliers are more likely to comport with due process." While Defendant could easily utilize the 2:1 ratio that *State Farm* found to be "instructive," other courts in this district have held that a 1:1 ratio between punitive damages and compensatory damages "provides a reasonable, if not 'conservative,' estimate for assessing punitive damages for purposes of calculating the amount in controversy." *See, e.g., Johnson*, 2023 WL 2713988 at *7.  Utilizing the smallest ratio of 1:1 (but without conceding its ultimate propriety for use in this case) and basing any potential exemplary damages award solely on the compensatory damages at issue in this action, a **minimum** punitive damages award in this action would be approximately **$589,268.50** [$466,461.96 (past lost wages) + $97,806.54 (future lost wages) + $25,000 (emotional distress) = $589,268.50].

### *Attorneys' Fees*

31.    Plaintiff claims that she is entitled to attorneys' fees and costs. (Compl., ¶¶ 140, 149, 160, Prayer for Relief, ¶ 6.)

32.    Where attorneys' fees are authorized by statute, they are appropriately part of the calculation of the "amount in controversy" for purposes of removal.  *Fritsch v. Swift Transp. Co. of Az., LLC*, 899 F.3d 785, 794 (9th Cir. 2018); *see Galt v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998) ("[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy.").

33.    The Court's own knowledge and experience in ruling on prevailing plaintiffs' motions for attorneys' fees in discrimination and wrongful termination cases, like this action, should indicate that it is "more likely than not" that Plaintiff will seek an attorneys' fees award of at least $75,000.00 if this case is litigated to judgment in a jury trial.  *See, e.g., Lopez,* 2009 WL 1090375, at *18-21

(affirming trial court's award of $1 million in attorneys' fees in wrongful termination action); *Crawford v. DirecTV, Inc.*, 2010 WL 5383296 (Cal. Super. Ct. Sept. 29, 2010) (awarding approximately $160,000 in attorneys' fees in wrongful termination action where the plaintiff's recovered damages were only $175,000).

34.    Notwithstanding the above, Defendant ***conservatively*** estimates that Plaintiff's attorneys' fees to litigate this action through a jury trial would be ***at least* $30,000.00** ($300 [rate per hour] *x* 100 hours [hours estimate]) = $30,000.00] for purposes of calculating the reasonable amount in controversy. *See Nguyen v. Ericsson, Inc.*, 2018 WL 2836076 (N.D. Cal. June 11, 2018) (Davila, J.) (approving "conservative estimate" of $30,000 for attorneys' fees in amount in controversy calculation); *see also Crockett v. Wal-Mart Assocs., Inc.*, 2024 WL 516713,*4 (E.D. Cal. Feb. 9, 2024) (using a "reasonable rate" of $300 per hour and "an appropriate estimate" of 100 hours to find that a reasonable estimate of attorneys' fees is $30,000).

35.    Based on the foregoing, the amount in controversy on Plaintiff's Complaint far exceeds the $75,000 jurisdictional threshold.

36.    That the total amount in controversy exceeds the $75,000 jurisdiction minimum to properly remove this action to this Court is further supported by the fact that on December 21, 2023, prior to filing suit, Plaintiff's counsel communicated a ***seven-figure settlement demand*** to counsel for Defendant, which included a demand for **$798,101.04** for lost wages, an inexplicable demand for 131,750 shares of EQIX stock (approximately **$127,223,070.00** worth of EQIX stock), $15,000 for tuition reimbursement, emotional distress in the amount of **$1,000,000.00**, and attorneys' fees in the amount of **$30,000.00**.  The Ninth Circuit has made clear that settlement demands can (and in fact should) be considered for purposes of establishing the amount in controversy for traditional diversity jurisdiction. *See Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002) (holding that plaintiff's settlement letter wherein he demanded $100,000 for his claims was sufficient to establish the amount in controversy); *see also Ives v. Allstate Ins. Co.*, 504 F.Supp.3d 1095, 1098 (C.D. Cal. 2020) (denying remand and finding that defendant "appropriately relie[d] on [plaintiff's $249,000.00] settlement demand" to establish the amount in controversy).  Accordingly, Plaintiff's "compromise" demand also establishes by a preponderance of the evidence that Plaintiff's purported damages far

exceed the jurisdictional threshold.

**IV.    THE COURT ALSO HAS FEDERAL QUESTION JURISDICTION.**

    **A.    THE COURT HAS ORIGINAL JURISDICTION OVER THE SEVENTH AND EIGHTH CAUSES OF ACTION.**

37.    Under 28 U.S.C. § 1331, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  Whether a case "arises under" federal law is to be determined based on the content of a "well-pleaded complaint." *Franchise Tax Bd. V. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 9-10 (1983).

38.    A "longstanding . . . variety of federal 'arising under' jurisdiction" is when state-law claims "implicate significant federal issues." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005).  The Supreme Court has recognized this category of federal-question jurisdiction for "nearly 100 years." *Id.*; *see also Franchise Tax Bd.*, 463 U.S. at 9 (observing that the Court has "often held that a case 'arose under' federal law where the vindication of a right under state law necessarily turned on some construction of federal law").

39.    More specifically, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Hornish v. King Cty.*, 899 F.3d 680, 688 (9th Cir. 2018) (quoting Gunn v. Minton, 568 U.S. 251, 258 (2013)). Thus, under the "artful pleading" rule, a plaintiff may not "defeat removal by omitting to plead necessary federal questions" in a complaint. *In re: Nat'l Football Leagues Sunday Ticket Antitrust Litig.*, 2016 WL 1192642, at *3 (C.D. Cal. Mar. 28, 2016) (citing *Franchise Tax Bd.*, 463 U.S. at 22).

40.    On the face of the Complaint, Plaintiff's Seventh and Eighth Causes of Action for Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing implicate substantial federal questions and necessary turn on an interpretation of the Employee Retirement Income Security Act of 1974, 29 U.S.C. Ch. 18, § 1001 *et seq.* ("ERISA"), which each cause of action alleges has been violated by Equinix. (Compl., ¶¶ 169, 175.)  Indeed, those claims may be preempted by ERISA altogether. *See Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 946 (9th Cir. 2009).

41.    "Congress provided for exclusive jurisdiction over ERISA-based claims in federal court and for preemption of state law by ERISA." *Shop Ironworkers Local 790 Pension Trust v. Cofab Steel Corp.*, 2009 WL 1202030, at *2 (N.D. Cal. Apr. 30, 2009) (citing 29 U.S.C. §§ 1132(e)(1) and 1144(a)) (White, J.).    "Accordingly, if a state-law based complaint 'relates to' an employee benefit plan as defined by ERISA, then the state law is preempted and the complaint 'arise[s] under the . . . laws . . . of the United States[,]' as necessary for original jurisdiction in federal district court." *Id.* (citing and quoting *Metro Life Ins. Co. v. Taylor*, 481 U.S. 58, 67 (1987) (quoting 28 U.S.C. § 1331)).    Moreover, federal district courts also have original jurisdiction "where the enforcement of [a] settlement agreement itself will require the adjudication of substantive federal law issues over which federal courts have exclusive jurisdiction under the ERISA statute." *Board of Trustees of the Hotel and Rest. Employees Local 25 and Employers' Health and Welfare Fund v. Madison Hotel, Inc.*, 97 F.3d 1479, 1484 (D.C. Cir. 2996).

42.    Plaintiff's Complaint and two of its causes of action are predicated on allegations that Equinix violated ERISA. (Compl., ¶¶ 169, 175.)    In determining these questions, the court will need to "adjudicate[e] substantive federal law issues over which federal courts have exclusive jurisdiction under the ERISA statute." *See Bd. of Trustees*, 97 F.3d at 1484.    Given these and other allegations in the Complaint, removal is proper because such substantial federal ERISA issues are essential to and form the basis of Plaintiff's state-law contractual claims. *Grable*, 545 U.S. at 315.    These disputed federal ERISA issues are substantial because, among other reasons, they directly affect an area reserved for exclusive federal jurisdiction.

43.    Accordingly, Plaintiff's Seventh and Eighth Causes of Action explicitly present federal questions under ERISA, over which this Court has original jurisdiction.

**B.    THE COURT HAS SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S RELATED STATE LAW CLAIMS.**

44.    Where a plaintiff asserts a combination of both state law and federal law claims, the case is removable when the state and federal claims are so related that they form part of the same case or controversy. *Geanta v. Compass Health, Inc.*, 673 F. App'x 768, 769 (9th Cir. 2017) (reversing dismissal of related state law claims on grounds that "district courts shall have supplemental

jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy"); *Garcia v. NRI USA, LLC*, 2018 WL 2315962, at *3 (C.D. Cal. May 21, 2018) (supplemental jurisdiction proper where complaint alleged FLSA claim and "state-law claims under the California Labor Code and Unfair Compensation Law"; "a court can exercise supplemental jurisdiction over state-law wage-and-hour class claims when original jurisdiction is present due to a FLSA claim"); *Elbling v. Crawford and Co.*, 2018 WL 1536717, at *1 (S.D. Cal. Mar. 29, 2018) ("The Court has federal question jurisdiction over the ERISA claim pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367(a)").

45. Indeed, courts retain original jurisdiction over an entire civil action on mixed jurisdiction claims, because only one federal claim is needed for original federal jurisdiction over an entire civil action. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 559 (2005) ("[i]f the court has original jurisdiction over a single claim in the complaint, it has original jurisdiction over a 'civil action' within the meaning of § 1367(a), even if the civil action over which it has jurisdiction comprises fewer claims than were included in the complaint"); *Saxe v. Cast & Crew Payroll, LLC*, 2015 WL 4648041, at *8 (C.D. Cal. Aug. 4, 2015) (same).

46. Here, because each of Plaintiff's nine causes of action allege and rely upon the same— or, at a minimum, overlapping—factual allegations, Plaintiff's state law claims are related to her federal law claims that they "form part of the same case or controversy" under Article III of the Constitution, giving rise to this Court's jurisdiction under 28 U.S.C. § 1367(a). U.S. Const. art. III. Both Plaintiff's state law and federal law claims arise from her employment relationship with Equinix.  For example, Plaintiff's each of Plaintiff's causes of action seek compensatory damages in the form of EQIX shares to which she claims she is entitled. *See Lagunas v. SPS Techs, LLC*, 2019 WL 949523, at *3 (C.D. Cal. Feb. 27, 2019) (exercising supplemental jurisdiction over plaintiff's lawsuit asserting FEHA and FLSA claims because the "state and federal claims arise from a common nucleus of operative facts . . . ."); *Saxe*, 2015 WL 4648041, at *9 ("Plaintiff asserts his non-preempted claim as part of the same complaint as his preempted claim [under the Labor Management Relations Act]. Further, both claims arise from the same conduct on the part of his Employers.  Thus, Plaintiff's

non-preempted claim under FEHA clearly falls within the Court's supplemental jurisdiction, and the Court may not decline to exercise supplemental jurisdiction over this claim[.].").

47.     Therefore, the Court has supplemental jurisdiction over Plaintiff's remaining state law claims along with her causes of action implicating ERISA, and Equinix is entitled to remove Plaintiff's claims to this Court.

## V.     **VENUE IS APPROPRIATE.**

48.     This action originally was brought in San Mateo County Superior Court in the State of California, which is located within the Northern District of California.   28 U.S.C. § 84(a). Therefore, venue in the United States District Court for the Northern District of California is proper for purposes of removal only because it is the "district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).

49.     A true and correct copy of this Notice of Removal will be promptly served on Plaintiff and filed with the Clerk of the San Mateo Superior Court of the State of California as required under 28 U.S.C § 1446(d).

41.     Nothing in this Removal Notice is intended or should be construed as any type of express or implied admission by Defendant Equinix of any fact, of any validity or merits of any of Plaintiff's claims, causes of action, and allegations, or of any liability for the same, all of which are hereby expressly denied, or as any type of express or implied waiver or limitation of any of the Defendants' rights, claims, remedies, and defenses in connection with this action, all of which are hereby fully and expressly reserved.

DATED: December 6, 2024              **MᴄGᴜɪʀᴇWᴏᴏᴅs LLP**


                                     By: _____
                                          Sabrina A. Beldner, Esq.
                                          David Szwarcsztejn, Esq.
                                          Charles J. Ureña, Esq.

                                     Attorneys for Defendant
                                     EQUINIX, INC.

1

## **PROOF OF SERVICE**

2

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

3

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 1800 Century Park East, 8th Floor, Los Angeles, California 90067.

4

5

On December 6, 2024, I served the following document(s) described as **DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT** on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes addressed as follows:

6

7

8

9

| | |
|---|---|
| Christopher Fortunati, Esq. | Attorneys for Melissa Civello |
| Helen Y. Byrens, Esq. | |
| WEINERLAW | *christopher@weinerlegacylaw.com* |
| 12027 High Bluff Drive, Suite 440 | *helen@weinerlegacylaw.com* |
| San Diego, CA 92130 | |

10

☒   **BY MAIL:** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing with the United States Postal Service. Under that practice, it would be deposited with the United States Postal Service that same day in the ordinary course of business. Such envelope(s) were placed for collection and mailing with postage thereon fully prepaid at Los Angeles, CA, on that same day following ordinary business practices. (C.C.P. § 1013 (a) and 1013a(3))

11

12

13

14

☐   **BY ELECTRONIC DELIVERY:** I caused said document(s) to be transmitted electronically to the above addressees. (C.C.P. § 1010.6)

15

☐   **BY OVERNIGHT DELIVERY:** I deposited such document(s) in a box or other facility regularly maintained by the overnight service carrier, or delivered such document(s) to a courier or driver authorized by the overnight service carrier to receive documents, in an envelope or package designated by the overnight service carrier with delivery fees paid or provided for, addressed to the person(s) served hereunder. (C.C.P. § 1013(d)(e))

16

17

18

☐   **BY PERSONAL SERVICE:** I caused such envelope(s) to be delivered the addressee(s). (C.C.P. § 1011)

19

20

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

21

Executed on December 6, 2024, at Los Angeles, CA.

22

_____
                        Matthew Whitney

23

24

25

26

27

28