**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Melissa Civello, | No. CV-25-01028-PHX-KML |
| Plaintiff, | **ORDER** |
| v. | |
| Equinix Incorporated, | |
| Defendant. | |

Melissa Civello, a cybersecurity engineer who worked remotely in Arizona, alleges California-based Equinix Incorporated discriminated against her while she was employed there. Equinix moves to dismiss all of Civello's claims, which are based on California statutes and common law. Civello has not alleged facts showing the relevant events are linked to California, so she cannot pursue the statutory claims. She fails to state a claim for wrongful termination under California law, which is all she invokes. Civello's other common-law claims are not governed by California law but rather Illinois law, and they too fail to state a claim upon which relief can be granted. All of Civello's claims are therefore dismissed with leave to amend.

## I.    Background

Civello filed her 81-page complaint in California state court asserting claims only under California law. Civello's complaint broadly alleges "specific instances of gender-based discrimination, workplace harassment, and retaliation[.]" (Doc. 40 at 7.) After Civello's case was removed to federal court in California, that court noted "[n]ot a single

fact plead[ed] by Plaintiff occurred in California." (Doc. 29 at 4.) In fact, her complaint makes only two allegations related to California: that Equinix does business there and venue is proper as a result. (Doc. 1-1 at 2, 68.) For purposes of resolving the motion to dismiss, only the following facts are relevant.

Equinix is based in California and hired Civello in July 2021 as a senior security engineer. (Doc. 1-1 at 3.) Civello was hired to work "from a remote home office in Illinois," but ended up working exclusively from a home office in Arizona. (Docs. 1-1 at 1–2, 38-1 at 1.) Civello was paid a base salary with the opportunity for annual bonuses. (Doc. 1-1 at 3.) Civello's offer letter "recommend[ed]" she be given restricted stock units ("RSUs") to vest at set times over four years if she remained in "active service through [each] vesting date." (Doc. 36 at 20; *see also* Doc. 1-1 at 3 ("The RSUs were expected to vest over a 4 year period[.]").) The offer letter contained a choice-of-law provision stating "the resolution of any disputes will be governed by Illinois law." (Doc. 38-1 at 3.)

Civello worked for various supervisors at Equinix and makes a variety of allegations about them, but it is unclear what claims she was attempting to assert against which supervisors. In any event, Civello did not serve any of the supervisors, so they were dismissed. (Doc. 44.) Equinix provided a declaration avowing none of the individuals named in the complaint were based in or worked from California. (Doc. 38 at 2–4.) Civello does not contest the declaration and admits the supervisors were based elsewhere. (*See* Doc. 1-1 at 2.)

Civello was terminated in June 2023. (Doc. 1-1 at 65–66.) She filed this lawsuit in California superior court in December 2024. (Doc. 1-1 at 1.) Defendants removed the case to the Northern District of California, and that court transferred the case to the District of Arizona. (Docs. 1 at 1, 29 at 1.)

## II.   Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

This is not a "probability requirement," but a requirement that the factual allegations show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[D]etermining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense." *Id.* at 663–64.

## III.    Analysis

Civello's California statutory claims are dismissed because she has not pleaded sufficient facts to invoke California law. Two of Civello's common-law claims are governed by Illinois law and all three are dismissed because they fail to state a claim.

### A.  California Statutory Claims

Civello brings six claims under California's Fair Employment and Housing Act ("FEHA") for disparate treatment, harassment, retaliation, gender discrimination, reprisal, and age discrimination, and one under the California Employment Protection Act ("CEPA"). California law recognizes a presumption against the extraterritorial application of its state laws. *See Churchill Vill., L.L.C. v. Gen. Elec. Co.*, 169 F. Supp. 2d 1119, 1126 (N.D. Cal. 2000), *aff'd sub nom. Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004) ("California law embodies a presumption against the extraterritorial application of its statutes.") (citation omitted). For California employment law to apply extraterritorially, a plaintiff must "plead a sufficient basis of facts to establish [her] work holds a substantial connection to California." *Sexton v. Spirit Airlines, Inc.*, No. 2:21-CV-00898-TLN-AC, 2023 WL 1823487, at *3 (E.D. Cal. Feb. 8, 2023). Civello admits she lived in and worked remotely from Arizona at all relevant times. (Doc. 1-1 at 1.) She argues her complaint outlines significant connections with California essentially because Equinix is based there and developed its policies there. These allegations do not establish a relevant connection to California for purposes of the extraterritoriality analysis.

### 1.  FEHA Claims

In the FEHA context, "the majority of courts in California and other jurisdictions

- 3 -

have found the extraterritorial application of FEHA is determined by the <u>situs of both</u> <u>employment and the material elements of the cause of action</u>[.]" *Russo v. APL Marine Servs., Ltd.*, 135 F. Supp. 3d 1089, 1094 (C.D. Cal. 2015), *aff'd*, 694 F. App'x 585 (9th Cir. 2017). For employees who do not principally work in California, the situs of employment is determined by whether the employee has "a 'definite base of operations in California' and perform[s] at least some work there." *Elzeftawy v. Pernix Grp., Inc.*, 477 F. Supp. 3d 734, 777 (N.D. Ill. 2020) (quoting *Ward v. United Airlines, Inc.*, 466 P.3d 309, 324 (Cal. 2020)).

Civello does not plausibly argue the situs of her employment was in California. In fact, she does not allege she ever worked in California. (*See* Doc. 1-1 at 1–81.) Civello only alleges Equinix does business there (Doc. 1-2 at 2) and "the unlawful employment practices" in her complaint occurred there—but she provides no factual support for that conclusory statement. Civello's response twice cites eight paragraphs of her complaint and one exhibit to allege her work is substantially connected to California, but those citations do not actually even mention California. (*See* Doc. 40 at 11 (citing Doc. 1-1 at 4–6, 8–9, 32, 33–34, 50–51).) As the Northern District of California noted, she worked "remotely and exclusively from her residence in Arizona" and all of the supervisors and colleagues she mentioned in her complaint "worked remotely from various other states[ ]" not including California. (Doc. 29 at 4.) An employee who is hired outside of California, resides outside of California, and performs her "official functions" outside of California does not have a situs of employment there. *Campbell v. Arco Marine, Inc.*, 50 Cal. Rptr. 2d 626, 632 (Cal. Ct. App. 1996).

To determine where the material elements of the cause of action occurred, the court looks at "the location of the alleged proscribed conduct." *Elzeftawy*, 477 F. Supp. 3d at 778. Here that would presumably be the employment actions taken against Civello, none of which she claims occurred in California. (*See* Doc. 1-1 at 1–81.) To the extent misconduct not rising to the level of an adverse employment action is relevant, Civello does not allege *that* occurred in California either. (*See* Doc. 1-1 at 1–81.) And Civello's

much-repeated argument that she has identified California-based actions (*see, e.g.*, Doc. 40 at 11) mischaracterizes the complaint. (*See* Doc. 1-1 at 1–81).

The complaint does not in actuality describe where any of the allegedly discriminatory acts took place and Equinix has provided a declaration stating none of the actors Civello names worked in California. (Doc. 38 at 3–4.) Civello acknowledges as much. (Doc. 1-1 at 2.) The complaint therefore does not establish the material elements of any FEHA claim occurred in California. *See Hill v. Workday, Inc.*, No. 23-CV-06558-PHK, 2024 WL 3012802, at *9 (N.D. Cal. June 14, 2024) (dismissing FEHA claim when the plaintiff did "not allege facts . . . to establish material or relevant events occurring in California, much less significant aggregation of events occurring in California") (citation omitted); *Anderson v. CRST Int'l, Inc.*, 685 F. App'x 524, 526 (9th Cir. 2017) (holding FEHA claims "fail[ed] because they are based on conduct that occurred outside [California]"). Even disregarding Equinix's location evidence, the complaint is best described as hopelessly vague regarding the relevant California actors and their purported misconduct and would therefore require dismissal nonetheless. *See Paparella v. Plume Design, Inc.*, No. 22-CV-01295-WHO, 2022 WL 2915706 (N.D. Cal. July 25, 2022) (dismissing FEHA claim because complaint was "unclear about the identities of the actors, locations of said actors, and existence of any tortious conduct in California[ ]").

Civello appears to argue in her response that although the conduct of the named employees may not have occurred in California, it was set in motion and ratified by Equinix decision-makers based there. (*See* Doc. 40 at 11.) But even assuming someone at Equinix headquarters participated in or ratified the misconduct so as to invoke California law, *see Campbell*, 50 Cal. Rptr. 2d at 632, the complaint contains no facts pertaining to those supposed (and unnamed) California decision-makers. *See Elzeftawy*, 477 F. Supp. 3d at 779 (dismissing FEHA claims because "there are no facts to indicate that any of the aforementioned proscribed conduct occurred (or was ratified by [defendant's] decision makers) in California"). Out-of-state workers are not entitled to protection under the laws of California merely because a company is headquartered there. *See Campbell*, 50 Cal.

Rptr. 2d at 632–33; *Munenzon v. Peters Advisors, LLC*, 553 F. Supp. 3d 187, 202 (D.N.J. 2021) (summarizing case law and determining a permanently out-of-state remote employee was not entitled to protection under the wage and hour laws of the state in which his company was headquartered). Therefore, this theory fails.

Civello has not pleaded her relationship with Equinix holds a substantial connection to California. (*See* Doc. 29 at 4 ("[n]ot a single fact plead[ed] by Plaintiff occurred in California").) Besides alleging Equinix does business there, Civello's complaint does not connect her work to California at all. *See Loza v. Intel Americas, Inc.*, No. 20-cv-06705-WHA, 2020 WL 7625480, at *4 (N.D. Cal. Dec. 22, 2020) (dismissing FEHA claims for lack of sufficient California nexus where plaintiff alleged only that defendant's principal place of business was California and his supervisor worked there); *see also Russo*, 135 F. Supp. 3d at 1094 (noting "the majority of courts in California and other jurisdictions" have not relied on the "residence of the employee or the employer[ ]" to determine whether to apply FEHA extraterritorially). For these reasons, Civello's FEHA claims are dismissed.

### 2. CEPA Claim

Civello brings one claim under a portion of California's Labor Code, the California Employment Protection Act ("CEPA"). It is dismissed because—like her FEHA claims— she has not overcome the presumption against that law's extraterritorial application. And the fact she never worked in California is even more consequential in the CEPA context. *See Paparella*, 2022 WL 2915706, at *6  (dismissing California Labor Code claim when plaintiff's complaint stated he was an Arizona resident at all relevant times); *Cotter v. Lyft, Inc.*, 60 F. Supp. 3d 1059, 1063 (N.D. Cal. 2014) (holding California Labor Code "do[es] not create a cause of action" for "residents of other states . . . who apparently never set foot in California in furtherance of their work with the [defendant's] company . . . . even if they work for a California-based company that makes all employment-related decisions in California"). For these reasons, Civello's CEPA claim is dismissed.

### B. Wrongful Termination Claim

Civello premises a separate wrongful termination claim on the "violation of public

1    policy, including, but not limited to[ ]" FEHA. (Doc. 1-1 at 76.) Equinix argues because

2    this claim is "predicated on FEHA," it should be dismissed "due to the lack of [a] California

3    nexus." (Doc. 36 at 9.) Civello confusingly seems to assert both a FEHA wrongful

4    termination claim and a common-law wrongful termination claim based on FEHA. (*See*

5    Doc. 40 at 14.)

6         To the extent the common-law wrongful termination claim arises under FEHA, it

7    fails for the same reasons the FEHA claim fails. *See Paparella*, 2022 WL 2915706, at *7.

8    Although a termination decision made in California can form the basis to apply FEHA

9    extraterritorially in the wrongful termination context, *see Sexton*, 2023 WL 1823487, at *4

10   (collecting cases), Civello's complaint never alleges facts that would support that theory.

11   Instead, Civello's response again mischaracterizes her complaint by citing paragraphs that

12   lack any allegations the decision to terminate her was made in California. (*See* Doc. 40 at

13   8 (citing Doc. 1-1 at 4–6, 8–9, 32, 33–34, 50–51)). Civello's wrongful termination claim

14   is therefore dismissed to the extent it is premised on FEHA. *See Hill*, 2024 WL 3012802,

15   at *9 (dismissing a FEHA claim when there were "insufficient allegations as to the location

16   where the termination decision was made[ ]").

17        Civello claims her wrongful termination claim "is not merely a statutory claim, but

18   a common law cause of action that derives from fundamental California public policy

19   interests." (Docs. 40 at 14, 1-1 at 76 (alleging wrongful termination based on violations of

20   public policy "including, but not limited to[ ]" the FEHA).) But this claim would fail even

21   if based on California public policy beyond FEHA. "Under California law, a wrongful

22   termination in violation of public policy claim must draw from a fundamental public policy

23   embodied in a constitutional or statutory provision." *Paparella*, 2022 WL 2915706, at *7.

24   Vague and conclusory allegations that some unidentified statute or constitutional provision

25   gives rise to a claim via California public policy principles do not state a claim. *See Iqbal*,

26   556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by

27   mere conclusory statements, do not suffice" to survive a motion to dismiss). Civello's

28   California-based common-law wrongful termination claim therefore fails.

1

2

### C. Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing Claims

3

4

5

6

7

8

9

Neither party provided Civello's employment contract, and both refer to the offer letter as the relevant document underlying Civello's claims for breach of contract and breach of the implied covenant of good faith and fair dealing. Equinix moved for judicial notice of Civello's offer letter. (Doc. 37.) Civello did not oppose the motion, so it is granted and the court will consider the offer letter Equinix provided (*see* Doc. 38-1 at 1–3). *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (considering document incorporated into the complaint at motion-to-dismiss stage).

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

The offer letter states "[t]he terms of this letter agreement and the resolution of any disputes will be governed by Illinois law." (Doc. 38-1 at 3.) Civello nonetheless argues these two claims are governed by California law instead of Illinois law. (Doc. 40 at 16.) Her basis for this argument is that applying Illinois law "would violate California's fundamental public policy . . . protecting employees from being deprived of earned wages and contractual benefits." (Doc. 40 at 16.) As Civello acknowledges, that policy is only relevant "[u]nder California's choice-of-law analysis[ ]" (Doc. 40 at 16), but it is Arizona's choice-of-law analysis that applies here. *See Unified W. Grocers, Inc. v. Twin City Fire Ins. Co.*, 457 F.3d 1106, 1111 (9th Cir. 2006) ("In determining what state law to apply, a federal court applies the choice-of-law rules of the state in which it sits." (citation and quotation omitted)). That analysis compels the use of Illinois contract law because the parties chose that in the offer letter and Civello does not argue the choice was invalid or ineffective under the applicable Restatement standard. *Swanson v. Image Bank, Inc.*, 77 P.3d 439, 441 (Ariz. 2003) (the test for determining whether a contractual choice-of-law provision applies is whether it "is valid and effective under Restatement § 187") (simplified); *Nanini v. Nanini*, 802 P.2d 438, 441 (Ariz. Ct. App. 1990) ("When the parties choose the law of a particular state to govern their contractual relationship and the chosen law has some nexus with the parties or the contract, that law will generally be applied.").

28

In Illinois, a breach of contract claim must allege "(1) the existence of a valid and

- 8 -

enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages." *TAS Distrib. Co. v. Cummins Engine Co.*, 491 F.3d 625, 631 (7th Cir. 2007) (citations omitted). "Only a duty imposed by the terms of a contract can give rise to a breach." *Id.*

Civello alleges her contract with Equinix entitled her to 2,289 shares of stock in the company "as a component of her compensation[ ]" and that it was unlawful for Equinix to take away her stock when she was terminated. (Doc. 1-1 at 77–78.) Equinix responds that the offer letter only agrees to "recommend[ ]" Civello be given RSUs and those RSUs would vest over four years *if* she remained employed "through the vesting date." (Doc. 36 at 20.) Civello argues her unlawful termination prevented her from satisfying the RSU vesting condition. (Doc. 40 at 25.) She notes "[a] party cannot take advantage of a condition precedent the performance of which he has rendered impossible." *Barrows v. Maco, Inc.*, 419 N.E.2d 634, 639 (1981) (citation omitted). So presumably her argument is that Equinix did breach the contract by unlawfully terminating her and therefore cannot rely on pre-vesting termination to skirt the breach of contract claim.

For Illinois's condition precedent impossibility doctrine to apply, the termination at issue must be made unjustly or deliberately to prevent the fulfillment of a condition. *See Capuano v. Consol. Graphics, Inc.*, No. CIV.A. 06 C 5924, 2007 WL 2688421, at *6 (N.D. Ill. Sept. 7, 2007); *Min. Res., Inc. v. Classic Coal Corp.*, 450 N.E.2d 379, 384 (1983). Civello's complaint lacks any allegations that Equinix deliberately or unjustly fired her to prevent her RSUs from vesting. Nor has Civello cited—and the court cannot find—any Illinois case applying the condition precedent doctrine where the crucial condition is an individual's continued employment. Civello's condition precedent argument therefore fails on the face of the complaint under applicable Illinois law. Her breach of contract claim is dismissed.

As for Civello's claim alleging a breach of the duty of good faith and fair dealing, such a duty "arise[s] from specific contract terms and obligations and simply requires a party to refrain from interfering with the performance of contractual obligations." *Stuart*

*Park Assocs. Ltd. P'ship v. Ameritech Pension Tr.*, 846 F. Supp. 701, 713–14 (N.D. Ill. 1994) (simplified). Thus, under Illinois law, a "breach of the duty of good faith *is* a breach of the contract." *Id.* (emphasis added). The "proper place" for such allegations is therefore "within a breach of contract claim" and not as a standalone cause of action. *Echo, Inc. v. Whitson Co.*, 121 F.3d 1099, 1106 (7th Cir. 1997); *see also McArdle v. Peoria Sch. Dist. No. 150*, 705 F.3d 751, 755 (7th Cir. 2013) ("The obligation of good faith and fair dealing is used as an aid in construing a contract under Illinois law, but does not create an independent cause of action."). This is especially true here because Civello's breach of contract claim is identical to her breach of the implied covenant of good faith and fair dealing claim. (*See* Doc. 1-1 at 77–79.)

To that end, Illinois cases have held a breach of the implied covenant of good faith and fair dealing claim is "inseparable" from a breach of contract claim, so "claims for breach of the duty of good faith [are] either subsumed within, or preempted by, . . . breach of contract claims." *Playboy Enters. Int'l, Inc. v. Smartitan (Singapore) Pte Ltd.*, No. 10-CV-4811, 2011 WL 3839711, at *2–3 (N.D. Ill. Aug. 26, 2011) (collecting cases); *see also LaSalle Bank Nat'l Assoc v. Paramont Props.*, 588 F. Supp. 2d 840, 853 (N.D. Ill. 2008) ("Illinois does not recognize an independent cause of action for breach of the implied duty of good faith and fair dealing.") (collecting cases). "Indeed, courts in Illinois regularly dismiss claims for breach of the implied covenant of good faith and fair dealing when they are not alleged within a breach of contract claim." *Playboy*, 2011 WL 3839711, at *3.

Because Civello's breach of contract claim is dismissed, her breach of the covenant of good faith and fair dealing claim based on the same factual allegations must also be dismissed. Civello may amend her breach of contract claim, but she may not make a standalone claim for a breach of the covenant of good faith and fair dealing if she does.

**IV.    Conclusion**

Civello's seven California statutory law claims are dismissed with leave to amend because she has not pleaded sufficient facts to invoke California law. Her common-law claim for wrongful termination and breach of contract is dismissed with leave to amend for

- 10 -

1    failure to state a claim and her breach of the covenant of good faith and fair dealing claim,

2    which is inextricably linked to her breach of contract claim under Illinois law, is likewise

3    dismissed on that basis.

4         If Civello chooses to amend, she must comply with Fed. R. Civ. P. 8(a), which

5    requires "a short and plain statement of the claim." Civello's sprawling 81-page complaint

6    did not comply with this rule; it was verbose and contained superfluous allegations like a

7    six-and-a-half-page chart seemingly describing her job duties (Doc. 1-1 at 13–19) and

8    puzzling references to Robert DeNiro and IBM (Doc. 1-1 at 36–37), neither of which

9    appear to be involved with this case. Any amended complaint must comply with Rule 8(a).

10        Accordingly.

11        **IT IS ORDERED** Equinix's motion for judicial notice (Doc. 37) is **GRANTED**.

12        **IT IS FURTHER ORDERED** Equinix's motion to dismiss (Doc. 36) is

13   **GRANTED**. If plaintiff chooses to amend she must do so no later than **July 23, 2025**. The

14   Clerk of Court is directed to enter judgment in favor of defendants if no amended complaint

15   is filed by that date.

16        Dated this 9th day of July, 2025.

17

18

19                                        _____

20                                        **Honorable Krissa M. Lanham**
                                          **United States District Judge**

21

22

23

24

25

26

27

28

- 11 -