**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Melissa Civello, | No. CV-25-01028-PHX-KML |
| Plaintiff, | **ORDER** |
| v. | |
| Equinix Incorporated, | |
| Defendant. | |

    In December 2024, Arizona-based Melissa Civello sued her California-based employer Equinix Incorporated ("Equinix") and related individuals in California state court for gender discrimination and related claims. (Doc. 1-1 at 1.) The defendants removed the case to the Northern District of California, and that court transferred the case to the District of Arizona because it found "all of the alleged conduct giving rise to her claims occurred outside of California." (Doc 29 at 1.) In July 2025, this court granted Equinix's motion to dismiss with leave to amend (Doc. 46) and Civello filed a first amended complaint ("FAC") later that month (Doc. 47). Equinix again moves to dismiss all claims. (Doc. 56.) Equinix's motion is granted and Civello's claims are dismissed without leave to amend.

**I.     Background**

    Civello was hired by California-headquartered Equinix in July 2021 as a cybersecurity engineer. (Doc. 47 at 2.) She worked remotely from Arizona at all relevant times. (Doc. 47 at 2.) Most of her colleagues also appear to have worked outside California; most relevantly, Civello's supervisors Eric Meyer worked from Florida and Jon Taylor

worked from Georgia.[1] (Doc. 46 at 2.) Civello alleges she "consistently interfaced" with California employees and executives, some of whom she names, and worked on some California programs. (Doc. 47 at 2-3.)

During her employment, Civello alleges her direct supervisor, Eric Meyer, excluded her from training opportunities and critical meetings (some of which "involved California-based leadership"), belittled her in group settings, and dismissed her contributions. (Doc. 47 at 2-3.) She was also left off of key communications and removed from leadership opportunities. (Doc. 47 at 3.) Projects she led were attributed to male colleagues and she was not permitted to present them, and she was removed from a project entirely for challenging a male colleague. (Doc. 47 at 3.) She alleges this constituted gender discrimination which affected her compensation because she was denied an earned promotion and because her bonus was lower than what she had earned (and what male colleagues received). (Doc. 47 at 11.) Finally, Civello was "terminated without clear cause" in June 2023. (Doc. 47 at 3.) Civello alleges "Eric Meyer . . . made the decision" to terminate her employment. (Doc. 47 at 13.)

Civello alleges she raised concerns regarding this treatment—specifically, "her exclusion from security training opportunities offered to male counterparts"—to Charles Lin, Equinix's California-based chief of staff. (Doc. 47 at 2-3.) She also "reported" Meyer's behavior to California-based colleague Eric Fisch. (Doc. 47 at 3.) She states she "escalat[ed] her compensation concerns to HR and leadership," but does not provide further detail as to this report or others. (Doc. 47 at 13; *see* Doc. 60 at 20.)

She alleges Equinix's "core employment policies, reporting channels, and HR structure were all designed and administered out of California," so the alleged adverse actions "were either implemented, ratified, or originated from California leadership." (Doc. 47 at 4.) And "several" actions occurred "following meetings with or direction from

---

[1] Civello's original complaint pleaded causes of action against these supervisors as well as other individuals; because she did not serve them, the supervisors and others were dismissed. (Doc. 44; *see* Doc. 46 at 2.) Civello nonetheless identifies these individuals as defendants in her response in opposition to Equinix's second motion to dismiss. (Doc. 60 at 1.) The court addresses only those defendants who have not already been dismissed.

California-based supervisors or collaborators." (Doc. 47 at 3.) She also states the "relevant decision-makers" were based in California. (Doc. 47 at 4.) But the only decision-makers she identifies by name or specific action are Meyer and Taylor, and neither of them worked from California. (*See* Doc. 47.)

Civello alleges five causes of action based on California law and Title VII of the Civil Rights Act: discrimination/disparate treatment based on gender, harassment and hostile work environment, gender discrimination, retaliation, and wrongful termination. She also pleads one claim under the federal and California Equal Pay Acts and two contract-related claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001, *et seq.*[2]

## II.   Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted)). This is not a "probability requirement," but a requirement that the factual allegations show "more than a sheer possibility that a defendant has acted unlawfully." *Id*. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

## III.   Analysis

### A.   Administrative Exhaustion

Civello pleads five causes of action under California's Fair Employment and Housing Act ("FEHA") and Title VII, both of which require that plaintiffs exhaust their administrative remedies before filing a lawsuit. For her FEHA claims, Civello timely filed

---

[2] Civello's opposition to the motion to dismiss substantially exceeds the page limit, at 20 pages of text and in a smaller font size than is permissible. The court considers the opposition but future non-compliance with page limits will result in the striking of the document.

an administrative complaint before the California Civil Rights Department ("CRD") and received a Right-to-Sue Notice (Doc. 53). *See Pollock v. Tri-Modal Distribution Servs., Inc.*, 491 P.3d 290, 295 (Cal. 2021). Civello therefore appears to have exhausted her claims under California Law. The court will assume for purposes of this order she also properly exhausted under Title VII. *See Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1104 (9th Cir. 2008) (for purposes of exhaustion under Title VII, construing charge filed with California to be constructively filed with EEOC due to worksharing agreement, despite state notice's direction to separately file with EEOC); *see also Stiefel v. Bechtel Corp.*, 624 F.3d 1240, 1245 (9th Cir. 2010) (when a plaintiff "receives a right-to-sue letter from the state agency, thereby becoming entitled to an EEOC right-to-sue letter, the plaintiff need not file a separate complaint with the EEOC nor receive an EEOC right-to-sue letter in order to file suit").[3]

### B. Time Bar

Assuming as the court has that Civello administratively exhausted, her Title VII claims are nonetheless subject to a 300-day time-bar. The governing portion of Title VII requires a plaintiff to file an EEOC charge within 180 days after the alleged unlawful practice, or 300 days if the plaintiff first files with a state agency with authority to grant relief. § 2000e-5(e)(1). The 300-day statute of limitations applies here because of Civello's CRD filing (as Equinix concedes). (Doc. 56 at 11.) In general, events that occurred before the 300-day window are not actionable. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (continuing violations doctrine generally does not permit courts to consider discriminatory acts which took place before 300-day window). This remains true even when those events are directly related to acts which *did* occur within the 300 days because "[e]ach discrete discriminatory act starts a new clock for filing charges alleging

---

[3] Equinix moved for judicial notice of CRD filing instructions and a sample Right-to-Sue Notice for a dual-filed charge (Doc. 57), as well as worksharing agreements between the CRD and EEOC from 2022-2024 (Doc. 62). These motions are unopposed and are granted. *See Knox v. Contra Costa Cnty.*, No. 20-CV-01449-JCS, 2022 WL 2290686, at *10 (N.D. Cal. June 24, 2022) (taking judicial notice of worksharing agreements because they are public records not subject to reasonable dispute and collecting cases where courts did the same).

- 4 -

that act." *Id*. "Discrete acts" include termination and failure to promote. *Id*. at 114. The exception to this general rule involves hostile work environment claims. That type of claim is not a discrete act because its "very nature involves repeated conduct." *Id*. at 115. Accordingly, as long as at least one "act contributing to [a hostile work environment] claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id*. at 117.

Because Civello filed her agency charge on April 23, 2024, events that occurred before June 28, 2023 will generally not be actionable. (Doc. 53.) The only event Civello alleges within that 300-day time period is her allegedly wrongful and discriminatory termination on June 29, 2023. (Doc. 47 at 15.) Prior discrete facts which support her discrimination, reprisal, and wrongful termination claims, such as the failure to promote her, cannot be considered—Civello's claims must succeed or fail based on the single timely event: a termination allegedly without cause (*see* Doc. 47 at 13). *Id*. at 115 (agreeing with case holding plaintiff cannot "use a termination that fell within the limitations period to pull in the time-barred discriminatory act"). And a termination without cause alone does not suggest discrimination, reprisal, or wrongful termination based on gender occurred. These claims therefore fail.

Civello also alleges a hostile work environment on the basis of gender, for which events before June 28 could be considered if she provided facts suggesting at least one harassing act took place within the statutory period. *Id*. at 117. But in neither her hostile work environment claim nor her wrongful termination claim does Civello allege the termination occurred as a result of or as part of a hostile work environment. (Doc. 47 at 6-10, 15-16). She also does not allege facts suggesting her work environment was hostile due to her gender, instead stating "Plaintiff is a woman" in a paragraph that also provides a bullet-point list of actions like "exerting authority over a subordinate" which could have any number of non-discriminatory explanations (Doc. 47 at 7-9).[4] *Henry v. Regents of the*

---

[4] Notably, the complaint does link the adverse actions to *national origin* discrimination as Civello claims, something which is not supported by any other allegation. (*See* Doc. 47 at 9 ("Plaintiff believes and thereon alleges that her National Origin was a factor in Defendant's adverse actions and hostile treatment.").)

- 5 -

*Univ. of California*, 37 F. Supp. 3d 1067, 1084 (N.D. Cal. 2014), *aff'd*, 644 F. App'x 787 (9th Cir. 2016) (dismissing Title VII hostile work environment claim at summary judgment in part because "there are no facts, other than plaintiff's speculation, that any of these incidents were motivated by" the plaintiff's protected characteristic). Ultimately, because she does not allege the termination—the only event within the 300-day period—was a result of a hostile work environment, her harassment claim also fails.

As this is Civello's second attempt amending her complaint, the motion to dismiss her Title VII claims is dismissed without leave to amend. *See Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1060 (9th Cir. 2008) (no leave to amend where amendment would be futile due to time-barred claims); *Kneisler v. Legacy Health*, 760 F. Supp. 3d 1137, 1144 (D. Or. 2024) (same, in employment discrimination right-to-sue case).

### C. FEHA Claims

Because of California's presumption against extraterritorial application of state statutes, FEHA's extraterritorial application requires a "connection between California and a crucial element of the claim." *Elzeftawy v. Pernix Grp., Inc.*, 477 F. Supp. 3d 734, 776 (N.D. Ill. 2020) (applying California law). The propriety of FEHA's extraterritorial application "is determined by the situs of both employment and the material elements of the cause of action, as opposed to residence of the employee or the employer." *Russo v. APL Marine Servs., Ltd.*, 135 F. Supp. 3d 1089, 1094 (C.D. Cal. 2015).

Courts determining the situs of employment evaluate whether an employee has "a 'definite base of operations in California' and perform[s] at least some work there." *Elzeftawy*, 477 F. Supp. 3d at 777; *see also Hill v. Workday, Inc.*, 773 F. Supp. 3d 779, 793 (N.D. Cal. 2025) (noting the situs of employment consists of the employee's "principal place of work," "definite base of operations," or "location to which the employee's work is substantially connected"). Civello did not have a base of operations in California and does not allege she performed *any* work there. (*See* Doc. 47.) Instead, Civello was an Arizona resident and worked entirely from Arizona for non-California supervisors (Doc. 47). *See Hill*, 773 F. Supp. 3d at 794. Her allegations that she "interfaced" with California

employees and collaborated on California projects (Doc. 47 at 2-3) do not imply a connection substantial enough to place the situs of employment in California. *Id.* at 794-95 (situs of employment was Maryland, where employee spent the majority of time, despite employee interfacing with California employees and visiting California).

Next, Civello has again failed to plead California was the situs of the material elements of the causes of action. This prong of the analysis depends on the location of the "core of the claim." *Id.*; *see Elzeftawy*, 477 F. Supp. 3d at 778 (examining location of "the material elements of the cause of action . . . that is, the location of the alleged proscribed conduct"). Here, the core of Civello's FEHA claims is the discriminatory, harassing, and retaliatory conduct and her wrongful termination. She alleges her supervisor Meyer was the primary actor giving rise to these claims; for instance, by preventing her from attending trainings and being assigned more work (Doc. 47 at 5-6), holding her to higher expectations than others (Doc. 47 at 7), and forcing her to use paid time off in a more restrictive manner than he did male colleagues (Doc. 47 at 5). She also alleges Jon Taylor passively condoned and participated in this conduct. (Doc. 47 at 7.) But she does not allege any of these core events took place in California and neither Meyer nor Taylor were based there. The same is true as to her allegations of wrongful termination because she makes very clear Meyer made the decision to terminate her. (Doc. 47 at 13.)

Civello does attempt to tie certain adverse events to Equinix's California headquarters, but these allegations do not satisfy FEHA's requirements or even Rule 8 more generally. Civello states the termination took place after certain "high-level reviews involving California-based executives," but she does not allege those reviews played a role in her termination. (Doc. 47 at 3.) She alleges Equinix headquarters paid her less than she had earned in her salary and bonus, but she does not plead any specifics regarding who made that decision, when, where, or on what basis. (Doc. 47 at 11.) *See Elzeftawy*, 477 F. Supp. 3d at 779 (dismissing FEHA claims where "no facts [] indicate that any of the aforementioned proscribed conduct occurred (or was ratified by [defendant] decision-makers) in California"). She also states she reported some behavior to a California-based

executive. (Doc. 47 at 2-3.) But even if this report could shift the situs of material elements for the reprisal claim to California, she does not allege the report had anything to do with her termination or other adverse actions, so it is irrelevant. Similarly, she alleges policies and HR structures were designed and administered in California, but does not allege either was the basis for any relevant event. (Doc. 47 at 4.) Instead, Civello relies upon the conclusory allegation that "[t]he adverse actions . . . were either implemented, ratified, or originated from California leadership." (Doc. 47 at 4.) That is not enough to state a claim under FEHA. *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Civello ultimately again fails to plead any relevant event took place in California or any decision-maker made a relevant decision in California. Courts have found FEHA does not apply in cases that are closer than this one. *See Russo*, 135 F. Supp. 3d at 1094 (California resident sued based on events which occurred on California-based vessel for California company, but events took place outside California waters); *Hill*, 773 F. Supp. 3d at 794-95 (plaintiff alleged material event took place during in-person visit to California and termination occurred or was approved in California); *Anderson v. CRST Int'l, Inc.*, 685 F. App'x 524, 526 (9th Cir. 2017) (California resident working for California company alleged sexual harassment by California colleague). Accordingly, Civello's FEHA claims are dismissed, this time without leave to amend because Civello has repeatedly failed to cure the same deficiencies previously addressed by the court. *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989) (noting a "district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint").

### D. California Equal Pay Act ("CEPA") Claim

The court dismissed the CEPA claim in Civello's original complaint because CEPA's barrier to extraterritorial application is even stronger than FEHA's. (Doc. 46 at 6). Plaintiffs who are residents of other states and who do not physically work in California cannot lodge a CEPA claim even if *all* employment-related decisions were made in

California. *Cotter v. Lyft, Inc.*, 60 F. Supp. 3d 1059, 1063 (N.D. Cal. 2014); *see also Ward v. United Airlines, Inc.*, 466 P.3d 309, 312 (Cal. 2020) (California wage-and-hour law is governed by where employee "principally" worked); *Paparella v. Plume Design, Inc.*, No. 22-CV-01295-WHO, 2022 WL 2915706, at *6 (N.D. Cal. July 25, 2022) (dismissing wage-and-hour complaint because plaintiff "is, and at all relevant times was, a resident of Maricopa County, Arizona" and did not show his principal place of work was California).

Civello did not meaningfully improve her claim after the court dismissed it; she still fails to plead she principally worked in California. (Doc. 47 at 2 (Civello "at all relative times herein . . . resides in Chandler, County of Maricopa, State of Arizona").) The claim is now dismissed without leave to amend. *See Ascon Props., Inc.*, 866 F.2d at 1160.

**E.  EPA claim**

For the first time in her amended complaint, Civello alleged a claim under the federal Equal Pay Act ("EPA"). That statute requires plaintiffs commence their actions within two years after the cause of action accrues, or three years if the violation was "willful." 29 U.S.C. § 255(a). Willfulness requires a plaintiff to "show that her employer either knew or showed reckless disregard for whether its conduct violated" the EPA. *Olson v. United States by & through Dep't of Energy*, 980 F.3d 1334, 1339 (9th Cir. 2020). Civello alleges Equinix violated the EPA by under-paying her for about a year and by paying her a 60% bonus when she had earned 120%. (Doc. 47 at 14.) Though the timeline is unclear from the FAC, Civello concedes her allegations only "extend into March 2023." (Doc. 60 at 3.) Because the FAC was filed in July 2025, Civello needed to allege willfulness to make her EPA claim timely.

Civello does not properly allege Equinix willfully violated the EPA. The FAC alleges Civello "received a 60% payout, with no valid justification" as to why male employees received a 120% bonus instead. (Doc. 47 at 14.) It further alleges Equinix failed to provide a compensation adjustment when Civello performed the duties of a Senior Manager. (Doc. 47 at 13-14.) But nothing in the FAC beyond conclusory statements supports the allegation Equinix did so willfully, knowingly, or recklessly. (*See* Doc. 47 at

14 ("Defendants willfully or recklessly disregarded the fact that its [sic] conduct was in violation of the . . . Equal Pay Act").)

Civello is correct that she ties her allegations of EPA violations to Equinix's specific conduct of under-paying her, she does not tie her allegations of *willfulness* to any fact at all. (Doc. 60 at 23.) Civello's "bare allegations that '[Defendant's] actions were willful,' do not support an inference Defendant[] knew or showed reckless disregard for" its violation of the EPA. *Gage v. Arizona Bd. of Regents*, 643 F. Supp. 3d 1013, 1022 (D. Ariz. 2022).

Accordingly, Civello's federal EPA claim is dismissed without leave to amend based upon the two-year statute of limitations. *See Platt Elec. Supply, Inc.*, 522 F.3d at 1060.

**F. ERISA-based claims**

Civello's original complaint pleaded state-law causes of action based on a contract she alleges promised her stock options. (Doc. 1-1 at 77-79.) Civello mentioned ERISA in pleading those claims, but the court interpreted Civello as attempting to allege contract-related state-law claims. (Doc. 46 at 8 (noting both parties referred to Civello's offer letter as the relevant document underlying these claims).) The court granted Equinix's motion to dismiss these claims. (Doc. 46.) Civello then filed an amended complaint which altered nothing except the headings for the ERISA-based causes of action. (Doc. 47 at 16-18.)

Before responding to Civello's amended complaint, Equinix complained it could not determine what ERISA plan Civello believed applied. (Doc. 48 at 3.) On July 28, 2025, the court ordered Civello to produce the written contract underlying her ERISA claims by August 4, 2025. (Doc. 50.) She did not. On August 5, 2025, the court gave Civello "a final opportunity" to file this contract by August 8, 2025. (Doc. 52 at 1.) Again, she did not. Despite ignoring those orders, Civello still opposes dismissal of her ERISA claims.

The FAC alleges a "written contract" entitled Civello to stock; it does not specifically allege the contract is governed by ERISA, nor does it include any contract language. (Doc. 47 at 16-18.) Civello's response is many pages over the limit; her ERISA-

related arguments are in portions of the motion which exceed the page limit and could be ignored. (Doc. 60.) But as warned in the court's August 5 order, if Civello chose not to identify the basis for her ERISA claims, "defendants will be entitled to argue, and the court will accept, that no such documents exist." (Doc. 52 at 1 (citing Fed. R. Civ. P. 37(b)(2)(A)(ii)).) Equinix now argues there is no contract governed by ERISA. (Doc. 56 at 17-18 ("in the absence of such 'contract,' there is no basis to even conclude ERISA applies . . . nothing in the Offer Letter suggests it constitutes an ERISA plan.").) As warned, the court accepts this argument. Civello has twice failed to plead the existence of an ERISA-governed contract and twice failed to provide it despite the court's direct orders. Accordingly, the ERISA claims are dismissed without leave to amend.

**IV.    Conclusion**

Equinix's motions for judicial notice are granted. Its motion to dismiss Civello's first amended complaint for failure to state a claim is granted because she did not sufficiently plead a California connection for her FEHA or CEPA claims, did not allege discrimination, reprisal, harassment, and wrongful termination within Title VII's 300-day window, did not plead a willful violation of the federal EPA sufficiently to invoke a three-year statute of limitations, and did not identify a basis for her ERISA claims.

/
/
/
/
/
/
/
/
/
/
/

Accordingly,

**IT IS ORDERED** the motion to dismiss (Doc. 56) is **GRANTED** and the First Amended Complaint is **DISMISSED without leave to amend**. The Clerk of Court shall enter judgment accordingly and close this case.

**IT IS FURTHER ORDERED** the motions for judicial notice in support of the motion to dismiss (Docs. 57, 62) are **GRANTED**.

**IT IS FURTHER ORDERED** the motion to strike plaintiff's opposition (Doc. 61) is **DENIED** as moot.

Dated this 13th day of November, 2025.

*[signature]*
Honorable Krissa M. Lanham
United States District Judge